Filed 10/27/15  P. v. Morris CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SETH ROLAND MORRIS,<br><br>    Defendant and Appellant. | G050355<br><br>(Super. Ct. No. 13NF3546)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, W. Michael Hayes, Judge.  Affirmed as modified.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton, Seth Friedman, and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

Seth Roland Morris stole shoes from Kohl's department store. The store's loss prevention officer, Shaunte Blackmon, called the police and followed Morris into the parking lot. Morris threatened to shoot Blackmon and ran away. An information charged Morris with the following crimes: (1) second degree robbery; (2) making criminal threats; (3) second degree commercial burglary; (4) resisting an executive officer; (5) possessing drug paraphernalia; and (6) misdemeanor resisting arrest. The information also alleged three prison priors within the meaning of Penal Code section 667.5, subdivision (b). Morris pleaded guilty to resisting an executive officer, resisting arrest, and possessing drug paraphernalia. A jury found him guilty of the remaining counts. The trial court determined the three prior prison allegations were true. The court sentenced Morris to serve four years in prison. On appeal, Morris contends the court abused its discretion when it excluded evidence Blackmon had a 16-year-old prior misdemeanor conviction for giving false information to a police officer. We disagree and affirm the judgment. In addition, we modify the judgment to correctly reflect the trial court imposed a six-month sentence for count 2 and stayed the sentence pursuant to Penal Code section 654.

I

In early October 2013, Blackmon watched Morris on a closed circuit surveillance camera enter the store, walk to the shoe department, put on a new pair of shoes, and walk out of the store. Blackmon called the police and followed Morris out of the store. When he caught up with Morris, approximately 10 to 15 feet outside the store, Blackmon identified himself as a loss prevention officer. He asked Morris to come back inside the store to discuss the stolen shoes. Morris responded, "Fuck you. I don't know what you're talking about. I didn't take anything."

Morris ran away, and Blackmon pursued him while talking on his cell phone with the police dispatch. Blackmon saw Morris move his hands near his pockets

and heard him say, "'Fuck you, I'll shoot you.'" Morris ran across the street into an apartment complex, which is when Blackmon stopped pursuing.

Officer Frank Nguyen was the investigating officer. He interviewed Blackmon and watched the surveillance video. Officer Nguyen recognized Morris in the video from prior contacts. Morris was arrested one week later.

Before trial, Morris brought a motion to admit evidence regarding a misdemeanor conviction Blackmon sustained in 1998, when he was 20 years old, for giving false identification to a peace officer (Pen. Code, § 148.9). Morris asserted this evidence was relevant because he planned to challenge Blackmon's credibility about whether Blackmon heard Morris make a criminal threat. The trial court denied the motion, ruling the evidence was inadmissible pursuant to Evidence Code section 352.[1] It reasoned the arrest occurred 16 years prior to trial and the police report had been destroyed. It concluded the use of the conviction itself was limited under *People v. Wheeler* (1992) 4 Cal.4th 284, 288 (*Wheeler*) [discussing restrictions on using misdemeanor convictions for impeachment purposes], would have very little probative effect, and would create an undue consumption of time.

II

On appeal, Morris maintains the trial court erred in excluding impeachment evidence of Blackmon's 1998 misdemeanor conviction, arguing it was relevant to the issue of whether the jury should believe Blackmon's testimony that Morris threatened to shoot him. Morris also contends his rights under the Fifth, Sixth, and Fourteenth Amendments were violated when the trial court excluded this evidence. We conclude these contentions lack merit and will discuss each separately below.

---

[1] All further statutory references are to the Evidence Code, unless otherwise indicated.

3

*A. Abuse of Discretion*

Morris argues the trial court should have admitted the impeachment evidence because it was clearly relevant to the issue of witness credibility. All parties agree Blackmon's 1998 conviction is relevant because it involves a crime of moral turpitude. (See *People v. Chavez* (2000) 84 Cal.App.4th 25, 28 [crimes in which dishonesty is an element constitute crimes of moral turpitude].) However, the fact Blackmon's misdemeanor conviction has some relevance is not enough; it must also be admissible under section 352.

Section 352 gives the trial court discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . necessitate undue consumption of time or . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Thus, "Under . . . section 352, a trial court has 'broad power to control the presentation of proposed impeachment evidence.'" (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1089.) "The statute empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues." (*Wheeler, supra*, 4 Cal.4th at p. 296.) A trial court's discretionary ruling under . . . section 352 will be upheld on appeal unless the trial court "exercised its discretion in an arbitrary, capricious, or patently absurd manner." (*People v. Thomas* (2012) 53 Cal.4th 771, 806.) "'[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered.'" (*People v. Mullens* (2004) 119 Cal.App.4th 648, 658.)

When exercising its discretion, the court must evaluate other factors when the impeaching evidence is not a felony and when the witness to be impeached is not the defendant. As explained by our Supreme Court in *Wheeler*, "[A]dditional considerations may apply when evidence other than felony convictions is offered for impeachment. In general, a misdemeanor—or any other conduct not amounting to a felony—is a less forceful indicator of immoral character or dishonesty than is a felony. Moreover,

4

impeachment evidence other than felony convictions entails problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present. Hence, courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value. (*Wheeler, supra*, 4 Cal.4th at pp. 296-297.) In addition, the Supreme Court ruled direct evidence of a misdemeanor conviction itself is inadmissible hearsay when used to prove a witness's credibility. (*Id.* at p. 300.) More direct means must be used when impeaching a witness based on misdemeanor misconduct, such as questioning the witness regarding the conduct on direct or cross-examination. (*Id.* at p. 300, fn. 14.)

In addition, it is well settled when the witness subject to impeachment is the defendant, the trial court weighs "(1) Whether the prior conviction reflects adversely on an individual's honesty or veracity; (2) the nearness or remoteness in time of a prior conviction; (3) whether the prior conviction is for the same or substantially similar conduct to the charged offense; and (4) what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions. [Citation.]" (*People v. Muldrow* (1988) 202 Cal.App.3d 636, 644.) However, "'When the witness subject to impeachment is not the defendant, those factors [guiding the court's discretion] prominently include whether the conviction (1) reflects on honesty and (2) is near in time.'" (*People v. Leonard* (2014) 228 Cal.App.4th 465, 497 (*Leonard*).) The other two factors are not applicable to someone who is not the defendant.

Applying the above rules, the trial court correctly reasoned the conviction was too remote and, therefore, did not "adequately reflect on who [Blackmon] is today" given Blackmon's age at the time of the conviction and the passage of time. We agree there is a substantial difference between a person's sometimes reckless and immature temperament as a 20-year-old as opposed to the character of a middle-aged employee. (See *People v. Beagle* (1972) 6 Cal.3d 441, 453, abrogated on other grounds by *People v. Diaz* (2015) 60 Cal.4th 1176 ["'The nearness or remoteness of the prior conviction is also

5

a factor of no small importance. Even one involving fraud or stealing, for example, if it occurred long before and has been followed by a legally blameless life, should generally be excluded on the ground of remoteness'"]; *People v. Burns* (1987) 189 Cal.App.3d 734, 738 (*Burns*) [conviction for a crime committed as a minor may be weighed less heavily than a crime committed when defendant was middle-aged].)

Blackmon has led a legally blameless life for the past 16 years. (*Burns, supra*, 189 Cal.App.3d at p. 738 [a 20-year conviction "certainly meets any reasonable threshold test of remoteness"].) Morris speculates it is well known that most criminal conduct is not discovered and prosecuted, suggesting Blackmon is not fault free. We will not engage in such speculation. As stated earlier, when the witness is not the defendant, remoteness of the conviction is a prominent factor. Because Blackmon has led a commendable life for nearly two decades, his misdemeanor conviction has little, if any, bearing on his credibility as a witness. The remoteness factor alone moved "the needle closer toward exclusion of the evidence under section 352. [Citation.]" (*Piscitelli v. Salesian Society* (2008) 166 Cal.App.4th 1, 12.) The trial court properly decided it was not worth the additional time to fill in gaps from the missing record to comply with the requirements of *Wheeler* (regarding admissibility of misdemeanor convictions). Based on all the above, it cannot be said the court's ruling was an abuse of discretion.

*B. Constitutional Arguments*

Morris further argues his rights under the Fifth, Sixth, and Fourteenth Amendments were violated because the trial court excluded impeachment evidence against Blackmon. The Attorney General argues that by not objecting on constitutional grounds at trial, Morris waived these arguments. Morris believes his constitutional arguments have not been waived because the trial court's error in excluding impeachment evidence had the legal consequence of violating his constitutional rights. We conclude that Morris's constitutional arguments were not waived.

Failure to raise an objection at trial on constitutional grounds does not automatically bar raising such arguments on appeal. (*People v. Boyer* (2006) 38 Cal.4th 412, 441, fn. 17.) Such is the case where the constitutional arguments "do not invoke facts or legal standards different from those the trial court itself was asked to apply, but merely assert that the trial court's act or omission, insofar as wrong for the reasons actually presented to that court, had the additional *legal consequence* of violating the Constitution." (*Ibid*.) However, "rejection, on the merits, of a claim that the trial court erred on the issue actually before that court necessarily leads to rejection of the newly applied constitutional 'gloss' as well. No separate constitutional discussion is required in such cases." (*Ibid*.)

For the same reasons we rejected Morris's claim the trial court erred in excluding impeachment evidence under section 352, we also reject the newly applied constitutional gloss as well. (See *People v. Riccardi* (2012) 54 Cal.4th 758, 809-810 [where there was no error under section 352 in excluding impeachment evidence, defendant's constitutional claims were rejected]; *People v. Riggs* (2008) 44 Cal.4th 248, 292 ["To the extent any constitutional claim is merely a gloss on the objection raised at trial, it is preserved but is without merit because the trial court did not abuse its discretion in admitting the evidence"]; *People v. Brown* (2003) 31 Cal.4th 518, 545 ["[R]outine application of state evidentiary law does not implicate defendant's constitutional rights"]; *Leonard, supra,* 228 Cal.App.4th at p. 497 [trial court's exclusion of prior misdemeanor as impeachment evidence was not error and, therefore, did not violate defendant's constitutional rights].) We conclude the purported evidentiary error did not implicate Morris's constitutional rights.

Moreover, even if there was constitutional error, it would be harmless. It is not reasonably probable a result more favorable to Morris would have been reached had the impeachment evidence been allowed because the misdemeanor conviction would have had little impact on Blackmon's credibility due to the remoteness of the conviction

7

and his lack of a criminal record for the past 16 years.  Additionally, the exclusion of the impeachment evidence was harmless because Morris had ample opportunity to question Blackmon's credibility on cross-examination.  The exclusion of cumulative evidence concerning a witness's credibility is not prejudicial.  (*People v. Farley* (2009) 46 Cal.4th 1053, 1105 (*Farley*) ["The accuracy and veracity of [the witness's] testimony was undermined by other evidence"].)  Blackmon admitted he was unable to identify Morris in a photographic line-up, he misidentified what Morris was wearing on the day of the robbery, and testified Morris stole only one pair of shoes instead of two.  Thus, Morris had other grounds upon which to impeach Blackmon's story.  We conclude there was no reversible error whether the *Watson* harmless error test is applied or the *Chapman* harmless beyond a reasonable doubt test is applied.[2]

Finally, Morris asserts his due process rights were violated and there is evidence of judicial bias because the court deemed his prior felony convictions admissible for impeachment but excluded similar evidence with respect to Blackmon. Morris's argument is flawed.  The trial court's decision to admit or exclude evidence of defendant's prior convictions is wholly distinct and separate from an analysis determining whether to admit or exclude prior convictions of witnesses.  Morris cites to no authority, and we found none, suggesting this disparity proves a due process violation. Moreover, although the court admitted evidence regarding Morris's three felony convictions, it excluded his 2004 misdemeanor conviction for the same reason it excluded Blackmon's 1998 misdemeanor conviction.  This ruling eliminates any suggestion of judicial bias.  "'[A] trial court's numerous rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review.' [Citation.]"  (*Farley, supra,* 46 Cal.4th at p. 1110.)

---

[2]        *People v. Watson* (1956) 46 Cal.2d 818, 836; *Chapman v. California* (1967) 386 U.S. 18, 24.

8

## III

The trial court imposed a six-month sentence for count 2 and stayed the sentence pursuant to Penal Code section 654. However, the court's minute order reflects a concurrent six month sentence was imposed on count 2. Both parties agree the minute order is erroneous. We agree. "Any discrepancy between the minutes and the oral pronouncement of a sentence is presumed to be the result of clerical error. Thus, the oral pronouncement of sentence prevails in cases where it deviates from that recorded in the minutes. [Citation.]" (*People v. Price* (2004) 120 Cal.App.4th 224, 242.) "Courts may correct clerical errors at any time, and appellate courts (including this one) that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts. [Citations.]" (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

## IV

The matter is remanded to the trial court with directions to amend the court's minute order to reflect the sentence for count 2; amend the abstract of judgment accordingly; and send a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation Division of Adult Operations. The judgment as modified is affirmed.

O'LEARY, P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.