Filed 8/19/24  P. v. Urbina CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>IRVING R. URBINA,<br><br>    Defendant and Appellant. | D082879<br><br><br>(Super. Ct. No. JCF006965) |

APPEAL from a judgment of the Superior Court of Imperial County, Eran M. Bermudez, Judge.  Affirmed.

Thien Huong Tran, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Anne Spitzberg, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Irving R. Urbina guilty of one count of possessing a controlled substance for sale (Health & Saf. Code, § 11351), and Urbina

admitted that he incurred a prior strike conviction. The trial court sentenced Urbina to a six-year prison term.

Urbina contends the trial court prejudicially erred by (1) admitting evidence of Urbina's 2009 prior conviction for transporting, importing, selling, furnishing administering, or giving away a controlled substance (Health & Saf. Code, § 11379, subd. (a)) to impeach his credibility as a witness; and (2) denying Urbina's motion to strike his prior strike.

We conclude that Urbina's contentions lack merit, and we accordingly affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

On June 5, 2023, police officers responded to a Jack-in-the-Box restaurant in Calexico after receiving a report that Urbina was hitting the walls inside the restroom. The officers concluded from Urbina's behavior and appearance that he was under the influence of drugs. Urbina confirmed for the officers that he had used both methamphetamine and fentanyl, and he explained that he had "an opioid issue." Urbina stated that he was from Thousand Palms, in Riverside County, but that he was at the Jack-in-the-Box waiting for a friend, whom he was going to help move. Urbina also stated that he had just crossed over the border from Mexico.

When the officers searched Urbina, they found a pouch containing two packages inside the leg of his pants. The first package contained 1.868 grams of fentanyl. The second package contained 49.918 grams of fentanyl. The fentanyl was in the form of a blue powder. Urbina told the officers that he had purchased the drugs in Calexico for the price of $500, but that he still owed $200 of that amount.

2

Urbina was charged with one count of possessing a controlled substance for sale. (Health & Saf. Code, § 11351.)

At trial, one of the officers testified that, in her opinion, Urbina intended to sell the fentanyl. She stated that if a single person used the amount of fentanyl possessed by Urbina, that person would have enough drugs for one and a half or two months of constant dosing. She also explained that if the amount of fentanyl found on Urbina was cut with another substance to make pills, the result would be up to 8000 pills, with a value of up to $5,000.

Urbina testified at trial. He stated that he did not intend to sell the fentanyl. Instead, he bought the drugs for his own consumption because it was less expensive to buy in large quantities, and because engaging in fewer purchase transactions decreased the risk of being arrested. Urbina confirmed that the price of the drugs was $500, but that he paid $300 upfront and would pay the remaining $200 later. Urbina testified that he was unemployed, but his wife worked, and he used his "savings" to buy the drugs.

The jury convicted Urbina as charged, and Urbina separately admitted that he incurred a prior strike. After denying Urbina's motion to strike his prior strike, the trial court imposed a prison sentence of six years.

## II.

## DISCUSSION

A. *Urbina's Contention That the Trial Court Erred by Admitting Evidence of Urbina's 2009 Conviction for Transporting a Controlled Substance to Impeach Urbina's Credibility as a Witness*

We first consider Urbina's contention that the trial court prejudicially erred in admitting evidence of one of Urbina's prior felony convictions to impeach Urbina's credibility as a testifying witness.

3

Urbina had three prior felony convictions: (1) a 2009 conviction for transporting, importing, selling, furnishing administering, or giving away a controlled substance (Health & Saf. Code, § 11379, subd. (a)); (2) a 2011 conviction for first degree robbery (Pen. Code, § 211) and (3) a 2011 conviction for being a felon in possession of a firearm (*id.*, § 12021, subd. (a)(1)). During motions in limine, Urbina sought a ruling that, in the event he decided to testify, his three prior convictions could not be used to impeach his credibility as a witness because that evidence would be unduly prejudicial under Evidence Code section 352. The trial court denied the motion. Accordingly, during Urbina's testimony, the jury learned of the existence of the three prior convictions.

On appeal, Urbina contends that the trial court abused its discretion in allowing evidence of the 2009 conviction for violation of Health and Safety Code section 11379, subdivision (a). He does not challenge the ruling admitting evidence of the other two convictions.

1. *Applicable Legal Standards*

"Article I, section 28, subdivision (f), of the California Constitution—which was adopted on June 8, 1982, when the voters approved an initiative measure designated on the ballot as Proposition 8 [(Proposition 8)]—declares in pertinent part that 'Any prior felony conviction of any person in any criminal proceeding . . . shall subsequently be used without limitation for purposes of impeachment . . . in any criminal proceeding.' " (*People v. Clair* (1992) 2 Cal.4th 629, 653–654.) Further, Evidence Code section 788 provides, with certain exceptions that are not relevant here, that "[f]or the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony." Accordingly, a witness may be impeached with a prior felony

4

conviction "subject to the trial court's exercise of discretion under Evidence Code section 352." (*People v. Clark* (2011) 52 Cal.4th 856, 931 (*Clark*).)

However, " 'the admissibility of any past misconduct for impeachment is limited at the outset by the relevance requirement of *moral turpitude*.' " (*Clark, supra*, 52 Cal.4th at p. 931, italics added; see also *People v. Castro* (1985) 38 Cal.3d 301, 317 (*Castro*) [a "prior conviction should only be admissible for impeachment if the least adjudicated elements of the conviction necessarily involve moral turpitude."].) Thus, " ' "subject to the trial court's discretion under [Evidence Code] section 352—[Proposition 8] authorizes the use of any felony conviction *which necessarily involves moral turpitude*, even if the immoral trait is one other than dishonesty." ' " (*People v. Edwards* (2013) 57 Cal.4th 658, 723–724.)

"The California Supreme Court has divided crimes of moral turpitude into two groups. [Citation.] The first group includes crimes in which dishonesty is an element (i.e., fraud, perjury, etc.). The second group includes crimes that indicate a " 'general readiness to do evil,' " from which a readiness to lie can be inferred. [Citation.] Crimes in the latter group are acts of 'baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' " (*People v. Chavez* (2000) 84 Cal.App.4th 25, 28–29.) Certain felonies, such as simple possession of narcotics, do not involve moral turpitude. (*Castro, supra*, 38 Cal.3d at p. 317.)

Once it is established that the prior conviction involves moral turpitude, "the latitude [Evidence Code] section 352 allows for exclusion of impeachment evidence in individual cases is broad.' [Citations] When determining whether to admit a prior conviction for impeachment purposes,

5

the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify." (*Clark*, *supra*, 52 Cal.4th at p. 931.)

Evidence Code section 352 provides that "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)  "When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify." (*Clark*, *supra*, 52 Cal.4th at p. 931.)

"A trial court's discretionary ruling under Evidence Code section 352 will not be disturbed on appeal absent an abuse of discretion." (*People v. Lewis* (2001) 26 Cal.4th 334, 374.)  In particular, "[b]ecause the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion." (*Clark*, *supra*, 52 Cal.4th at p. 932.)

2.      *The Trial Court Did Not Abuse Its Discretion*

Urbina expressly conceded in the trial court that all three of his prior felony convictions were for crimes of moral turpitude.  He takes the same position on appeal.  We accordingly proceed on that premise for the sake of

6

our analysis with respect to the 2009 conviction at issue here. (See *People v. Navarez* (1985) 169 Cal.App.3d 936, 949 (*Navarez*) [a conviction under Health & Saf. Code, § 11352, based on either transportation or sale of heroin, entails moral turpitude].) As a crime of moral turpitude, Urbina's 2009 conviction for transporting, importing, selling, furnishing administering, or giving away a controlled substance (Health & Saf. Code, § 11379, subd. (a)) was admissible to impeach Urbina's credibility as a witness *unless* its exclusion from evidence was required by Evidence Code section 352.

In applying Evidence Code section 352, we first examine the extent to which the 2009 conviction had probative value with respect to Urbina's credibility as a witness. Case law explains that although drug-related crimes, such as trafficking, do not *directly* relate to a character for dishonesty, they are relevant to a witness's credibility because they demonstrate "a readiness to do evil." (*People v. Gabriel* (2012) 206 Cal.App.4th 450, 459.) This is because "a witness'[s] moral depravity of any kind has some 'tendency in reason' . . . to shake one's confidence in his honesty." (*Castro*, *supra*, 38 Cal.3d at p 315.)[1] Case law establishes that a conviction related to trafficking in narcotics falls into the category of crimes

---

[1] In his reply brief, Urbina cites *People v. Holt* (1984) 37 Cal.3d 436, 453, which stated that a burglary conviction "would only be relevant to credibility if it involved an intent to commit theft or some other *dishonest* act." (Italics added.) *Holt* is not applicable here because it expressly relied on case law decided prior to the adoption of Proposition 8 in 1982. (*Holt*, at p. 452 [following *People v. Smith* (1983) 34 Cal.3d 251, 262, which stated that to "avoid doubts as to the constitutionality . . . under the ex post facto clause" it would apply "Proposition 8 . . . only to criminal proceedings arising out of offenses committed on or after the date it took effect"].) In *Castro*, *supra*, 38 Cal.3d 301, our Supreme Court later concluded that, in light of Proposition 8, any crime that involves moral turpitude is relevant to impeach a witness's credibility. (*Id*. at p. 315.)

7

that show readiness to do evil.  (Cf. *Navarez, supra,* 169 Cal.App.3d at p. 949.)  In this case, Urbina's credibility as a witness was *especially* relevant because Urbina's defense depended on the jury believing his testimony that he bought the fentanyl solely for personal consumption rather than to sell it. Accordingly, the trial court was within its discretion to conclude that Urbina's 2009 conviction had considerable probative value for impeachment within the context of this case.[2]

Urbina argues that the 2009 conviction lacked significant probative value to impeach his credibility because it was remote in time.  Urbina's argument is not persuasive because case law holds that the remoteness of a prior conviction, standing alone, does not require exclusion under Evidence Code section 352.  (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925 ["convictions remote in time are not automatically inadmissible for impeachment purposes"]; *People v. Burns* (1987) 189 Cal.App.3d 734, 738 ["there may be no conviction that is per se too remote to be used for impeachment"].)  Remoteness of a prior conviction tends to favor exclusion only "if it occurred long before *and has been followed by a legally blameless life.*"  (*People v. Beagle* (1972) 6 Cal.3d 441, 453 (*Beagle*), italics added.) "Despite its age" a conviction may nonetheless be admitted when the

---

[2]     We note that the existence of Urbina's prior conviction under Health & Safety Code section 11379, subdivision (a) was relevant to his credibility for one other reason, although the record contains no indication that the trial court was aware of that reason when making its ruling.  Specifically, when the officers spoke with Urbina while arresting him, they asked whether he had ever been arrested in the past.  Urbina replied, "Yeah, but nothing related to the drugs, you know?"  He described his past arrests as "Just minor shit, you know?"  The existence of the 2009 conviction for violation of Health and Safety Code section 11379, subdivision (a) directly contradicts that statement and shows that Urbina was untruthful in speaking to the officers.

defendant "did not subsequently lead a blameless life." (*People v. Green* (1995) 34 Cal.App.4th 165, 183 (*Green*).) "[T]he systematic occurrence of defendant's priors . . . creates a pattern that is relevant to defendant's credibility." (*People v. Muldrow* (1988) 202 Cal.App.3d 636, 648.)

Here, Urbina did not lead a subsequently blameless life after the 2009 conviction, as he incurred two additional convictions in 2011. Further, the remoteness of the 2009 conviction is less significant because Urbina was incarcerated for much of the intervening time between that conviction and the present offense. Specifically, in 2011, Urbina was sentenced to a nine year eight month prison term. (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1056 [convictions incurred 17 years prior were not too remote in time to use for impeachment because the defendant had been incarcerated for much of the intervening period, which reduced the strength of his argument that he subsequently led a ' " 'legally blameless life' " '].) Accordingly, the trial court was well within its discretion to conclude that the remoteness of the 2009 conviction did not meaningfully reduce its probative value to impeach Urbina's credibility.

For similar reasons, although the jury also heard evidence of Urbina's two convictions from 2011, both of which also served to impeach his credibility, the trial court could reasonably conclude that the 2009 conviction had *additional* probative value because, as our Supreme Court has observed, "a series of crimes may be more probative of credibility than a single crime." (*Clark, supra,* 52 Cal.4th at p. 932.)

Next, turning to the issue of whether evidence of the 2009 conviction gave rise to undue prejudice, Urbina contends that because possession of a controlled substance for the purpose of sale was charged in this case, it was prejudicial for the jury to learn of a similar drug-related offense from 2009.

9

Case law points out that evidence of an identical previous crime may create a risk of prejudice because of " 'the inevitable pressure on lay jurors to believe "if he did it before he probably did so this time" ' " and to treat the prior conviction as propensity evidence rather than to use it solely to assess the defendant's credibility. (*Beagle*, *supra*, 6 Cal.3d at p. 453.) However, as our Supreme Court has explained, "[a]though the similarity between the prior convictions and the charged offenses is a factor for the court to consider when balancing probative value against prejudice, it is not dispositive." (*Clark*, *supra*, 52 Cal.4th at p. 932.) Thus, " '[t]he identity or similarity of current and impeaching offenses is just one factor to be considered by the trial court in exercising its discretion.' " (*Green*, *supra*, 34 Cal.App.4th at p. 183.) " 'While before passage of Proposition 8 [in 1982], past offenses similar or identical to the offense on trial were excluded, now the rule of exclusion on this ground is no longer inflexible.' " (*People v. Hinton* (2006) 37 Cal.4th 839, 888.) Accordingly, the trial court was not required to exclude evidence of the 2009 conviction merely because it was similar to the instant offense.

In sum, given the trial court's broad discretion to determine whether prior convictions involving moral turpitude should be excluded under Evidence Code section 352, the trial court acted within its discretion to decide

that the probative value of Urbina's 2009 conviction warranted its admission to impeach Urbina's credibility despite its similarity to the instant offense.[3]

B.  *The Trial Court Did Not Abuse Its Discretion by Denying Urbina's Motion to Strike His Prior Strike*

We next consider Urbina's contention that the trial court erred by denying his motion to strike his prior strike arising from his 2011 conviction for first degree robbery (§ 211).

Urbina argued that the prior strike should be stricken because (1) he was addicted to and under the influence of drugs when he committed the instant offense; (2) he had "a history of verbal and mental abuse by his father, who introduced him to drugs";[4] (CT 275)! (3) the current offense did not involve any violence or the use of a firearm, indicating that Urbina's crimes were not increasing in seriousness;  and (4) the conviction was more than 12 years old.

The trial court denied the motion to strike Urbina's prior strike.  As the trial court explained, "In this case the first degree robbery conviction is on the older side; however, the age of a conviction is not the only factor that the Court is looking to.  I don't think Mr. Urbina can be deemed outside the spirit

---

[3]  Urbina contends that the trial court's error in admitting evidence of the 2009 conviction rendered the trial so fundamentally unfair that it violated federal due process.  (See *People v. Falsetta* (1999) 21 Cal.4th 903, 913 ["The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair."].)  Based on our conclusion that the trial court was within its discretion to rule that admission of the 2009 conviction would not be unduly prejudicial under Evidence Code section 352, we reject the argument that admission of the evidence rendered the trial fundamentally unfair.

[4]  The claim of childhood abuse was described as being based on "interview[s]" with Urbina's mother and wife, but no supporting evidence was submitted.

of the Three Strikes scheme. The conviction is not so old. This is not his first offense." The trial court stated, "I'm sympathetic to his drug addiction and I would hope that he gets help," but it also commented on "the dearth of evidence regarding the alleged trauma and victimization by the father." The trial court concluded, "I think taken on balance there's nothing before me at this time that would warrant striking the strike."

In applying the "Three Strikes" law, a trial court may strike a prior strike "in furtherance of justice." (§ 1385, subd. (a); see also *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 529–530.) In deciding whether to do so, a court considers "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) "[T]he law creates a strong presumption that any sentence that conforms to [its] sentencing norms is both rational and proper." (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*).)

We apply an abuse of discretion standard when reviewing the trial court's refusal to strike a prior strike. (*Carmony, supra*, 33 Cal.4th at p. 375.) "[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss . . . or where the court considered impermissible factors in declining to dismiss," or where " 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[ ] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case. . . . [¶]

12

But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations." (*Id.* at p. 378, citations omitted.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.) Only in "an extraordinary case—where the relevant factors . . . manifestly support the striking of a prior conviction and no reasonable minds could differ" would "the failure to strike . . . constitute an abuse of discretion." (*Id.* at p. 378)

Here, the record supports a determination that Urbina was not "outside the . . . spirit, in whole or in part" of the Three Strikes law. (*People v. Williams, supra*, 17 Cal.4th at p. 161.) The conviction in this case was Urbina's fourth felony conviction since 2009, and, as we have described above, one of those offenses was for similar conduct to the instant offense. Although Urbina did not incur any other convictions between the current offense and his 2011 robbery conviction, in the interim period he served a prison term of nine years eight months. That timeline shows that Urbina resumed his criminal conduct relatively soon after being released back into society. "The circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack.' " (*Carmony, supra*, 33 Cal.4th at p. 378.)

Although Urbina contends that his offense in this case was "not in any way egregious," and therefore shows that his crimes are "not increasing in seriousness," he overlooks that his crime in this case involved the sale of fentanyl, which poses a serious harm to public safety. (*Commonwealth v. Burton* (Pa. Super. Ct. 2020) 234 A.3d 824, 833 [" 'In the midst of today's

13

opioid epidemic it is common knowledge that fentanyl is particularly deadly.' "]; *United States v. Vallez* (D.N.M. 2024) __F.Supp.3d __, __ fns. 5 & 6, 2024 WL 1886575, at *2, 2024 U.S. Dist. LEXIS 78985, at *5 [citing sources about the deadly nature of fentanyl, including that "[f]entanyl is the number one cause of death among Americans ages 18 to 45"].)  The trial court observed at the sentencing hearing that Urbina's criminal conduct was a "danger to the community."

Further, the trial court was within its discretion to discount the value of Urbina's claim of childhood abuse because it was not supported by any evidence.  It is the defendant's burden to provide the trial court with evidence to support a motion to strike a prior strike.  (*People v. Lee* (2008) 161 Cal.App.4th 124, 129–131.)

In light of Urbina's criminal history, the conclusion that Urbina does not lie outside of the spirit of the Three Strikes law is not "so irrational or arbitrary that no reasonable person could agree with it."  (*Carmony, supra*, 33 Cal.4th at p. 377.)  Urbina thus has not established that the trial court abused its discretion in declining to strike his prior strike.

## DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.